## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRENDA TAM,<br><br>            Plaintiff,<br><br>      v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>            Defendant. | Civil Action No. 08-1612(SDW)<br><br>**OPINION AND ORDER**<br><br>March 30, 2009 |

**WIGENTON**, District Judge

Before the Court is Claimant Brenda Tam's appeal of the Commissioner of Social Security's final decision that she was not eligible for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"), 42 §§ U.S.C. 401–33. The central issues are whether the Administrative Law Judge ("ALJ") erred in rejecting the testimony of the medical expert and erred in crediting the testimony of the vocational expert.

This appeal is decided without oral argument pursuant to Local Civil Rule 9.1(b). The Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons set forth below, the Court REVERSES and REMANDS the Commissioner's decision.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

On October 28, 2003, Brenda Tam ("Claimant") filed an application for Disability Insurance Benefits, alleging disability due to depression and bipolar disorder from

---

[1] Because the issues on appeal are limited to the testimony of the medical expert and the vocational expert, it is not necessary to examine the entirety of the factual background of the case.

February 1, 1991 until December 31, 1994.[2] (Tr. 14.) Claimant maintained medical insurance coverage through December 31, 1994. (Tr. 113.) Claimant first began to exhibits symptoms in 1989 when she would frequently cry. (Tr. 28.) In February 1990, Claimant was admitted to the psychiatric ward of Ellis Hospital after an uncontrollable crying spell. (Tr. 38, 85.) Claimant was again admitted to Ellis Hospital for several weeks in June and July of 1991, and again in August of 1991. (Tr. 85.) According to Claimant's disability report dated October 28, 2003, Dr. Rajnish Chaudhry examined Claimant on March 19, 1990 and May 14, 1992. (Tr. 84.) According to said disability report, Claimant was also examined by Dr. Michael Manley on August 18, 1992 and on April 20, 1993. (Tr. 84.) Both Drs. Manley and Chaundry evaluated Claimant for depression and treated her with medication and counseling. (Tr. 84.) Claimant was evaluated by Dr. Jack Weinstein on June 9, 1995. (Tr. 194, 226.) At this visit, Dr. Weinstein noted that she had been taking Lithium and Trilafon for about the prior four years. (Tr. 226.) Dr. Weinstein last examined Claimant on April 25, 2003; he diagnosed Claimant with bipolar disorder versus a schizoaffective disorder. (Tr. 194.)

Claimant's application for Disability Insurance Benefits was denied initially on January 8, 2004 and again March 23, 2004. (Tr. 50-60.) Consequently, Claimant requested a hearing before an ALJ to review her application. (Tr. 61.) Claimant's ALJ hearing was held on August 9, 2005 by ALJ Richard L. DeSteno. (Tr. 66-69.) ALJ DeSteno denied Claimant's application on August 22, 2005. (Tr. 11-22.) Claimant's request for Appeals Council review was denied on November 25, 2005. (Tr. 5-9.) Thereafter, Claimant commenced District Court review on January 26, 2006. (Claimant's

---

[2] Therefore, the relevant timeframe for this appeal is February 1, 1991 to December 31, 1994.

2

Br. 1.) Judge Katherine S. Hayden issued an Order on December 19, 2006 remanding this matter; Judge Hayden ordered the testimony from a psychiatric medical advisor and a vocational expert. (Tr. 251.)

On October 30, 2007, a new hearing was held before ALJ DeSteno. (Tr. 262-266.) ALJ DeSteno heard testimony from Dr. Joseph Vitolo, a court appointed psychiatrist and Rocco Meola, a court appointed vocational expert. (Tr. 283-305.) In a decision dated November 2, 2007, ALJ DeSteno again denied Claimant's application. (Tr. 238-250.) Claimant's request that the Appeals Council review ALJ's decision was denied on January 28, 2008. (Claimant's Br. 2.) Thereafter, Claimant commenced this action seeking a reversal of the Commission's decision or a remand.

## II. DISCUSSION

### A. Standard of Judicial Review

The district court must affirm the Commissioner's decision if it is supported by substantial evidence. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986); *see* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a mere scintilla of evidence but may be less than a preponderance." *Stunkard v. Sec'y of Health & Human Serv.*, 841 F.2d 57, 59 (3d Cir. 1988) (quoting *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979)). The reviewing court must consider the totality of the evidence and then determine whether there is substantial evidence to support the Commissioner's decision. *See generally Taybron v. Harris*, 667 F.2d 412, 413 (3d Cir. 1981). The reviewing court is not

"empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied*, 507 U.S. 924 (1993) (citing *Early v. Heckler*, 743 F.2d 1002, 1007 (3d Cir. 1984)).

Remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979).

In determining whether there is substantial evidence to support the Commissioner's decision, the reviewing court must consider the: "(1) objective medical facts; (2) diagnoses and medical opinions of examining physicians; (3) subjective evidence of pain and disability as described by plaintiff and corroborated by others who have observed him; and (4) plaintiff's age, educational background and work history." *Curtin v. Harris*, 508 F.Supp. 791, 793 (D.N.J. 1981) (citing *Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972)). When a medical opinion is consistent with other substantial evidence, it is given controlling weight. 20 C.F.R. §§ 416.927(c)(1), (d)(2). However, if a medical opinion is either inconsistent with other evidence in the case or is internally inconsistent, the Commissioner will "weigh all of the evidence [to decide] whether [the claimant] is disabled . . . ." 20 C.F.R. § 416.927(c)(2). Further, issues which are dispositive in deciding the claimant's eligibility for disability benefits will be decided by the Commissioner based on his role as an adjudicator, rather than based on that of a physician's medical opinion. Soc. Sec. Rul. 96-5p (1996); 20 C.F.R. § 416.927(e).

However, the district court "cannot exercise [its] duty of review unless [it is] advised of the considerations underlying the action under review . . . ." *Cotter v. Sec'y of*

4

*Health & Human Serv.*, 642 F.2d 700, 705 n.7 (3d Cir. 1981). Therefore, "the grounds upon which the administrative agency acted [must] be clearly disclosed and adequately sustained." *Cotter*, 642 F.2d at 705 (citation omitted). Each finding in the evaluation process must be supported by reasoned analysis and "where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know that basis for the decision." *Id.*

## B. Standard for Determining Eligibility of Disability Benefits

A claimant may be entitled to benefits under the Social Security Act if she demonstrates her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). A physical or mental disabling impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). An individual will be deemed disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process to determine whether a claimant is "disabled" within the meaning of the Act. 20 C.F.R. §§ 404.1520(a), 416.920(a);

*Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). The claimant bears the burden of proof in the first four steps; the burden then shifts to the Commissioner at the fifth and final step. *Jones*, 364 F.3d at 503 (citing *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999)).

At step one, the Commissioner determines whether the claimant is engaging in work activity that is both "substantial" (work activity that involves doing significant physical or mental activities) and "gainful" (work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. §§ 404.1572(a), (b), 416.972(a), (b). If the claimant is engaging in substantial gainful work activity, she is not disabled and the sequential evaluation terminates at step one with such a finding. *Id.*

If not, at step two, the Commissioner determines whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment is severe if it significantly limits a claimant's ability to perform basic work activities. *Id.* If the claimant fails to establish a severe medically determinable impairment or combination of impairments, she is not disabled and the sequential evaluation terminates at step two with such a finding. *Id.*

If the claimant establishes a severe medically determinable impairment or combination of impairments, at step three, the Commissioner determines whether such impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). If the claimant's impairment or combination of impairments meets or medically equals the criteria listed

6

and meets the duration requirement,[3] the claimant is disabled and the sequential evaluation terminates at step three with such a finding. *Id.*

If not, at step four, the Commissioner determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). A claimant's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. In making this determination, the Commissioner must consider all of the claimant's impairments, including impairments that are not severe. *Id.* Next, the Commissioner must determine whether the claimant has the RFC to perform her past relevant work ("PRW"). The term PRW means work performed within the last fifteen years or fifteen years prior to the date that disability must be established. Further, the work must have lasted long enough for the claimant to learn to do the job and have been substantial gainful activity. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. If the claimant has the RFC to do her PRW, the claimant is not disabled and the sequential evaluation terminates at step four with such a finding. *Id.*

If not, at step five, the Commissioner determines whether the claimant is able to do any other work considering her RFC, age, education and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the claimant is able to do other work, she is not disabled. However, in order to support a finding that the claimant is not disabled at this step, the Social Security Administration must provide evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given her RFC, age, education and work experience. 20 C.F.R. §§ 404.1512(g), 404.1560(c),

---

[3] 20 C.F.R. §§ 404.1509, 416.909.

416.912(g), 416.960(c); *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). If the claimant is not able to do other work and meets the duration requirement, she is disabled.

## C. Brenda Tam's Eligibility for Disability Benefits

Claimant maintains that she is entitled to disability benefits as of February 1, 1991 because she suffers from depression and bipolar disorder. After the requisite five-step analysis, the ALJ concluded that Claimant was not disabled under the Act on or prior to December 31, 1994, the date that Claimant was last insured. In making his determination, the ALJ relied upon a February 26, 1990 police report; medical records from Ellis Hospital, Robert Wood Johnson Medical Center, Carrier Clinic and Claimant's treating psychiatrist, Dr. Weinstein; written statements from various friends including Reverend David Lam, Deacon Jeffrey Hong Lok Tsang, Bert and Anita Parker, and Tina Chen; the testimony of Claimant and Claimant's husband, Kwok Tam, ALJ-appointed psychiatrist Dr. Joseph G. Vitolo, and ALJ-appointed vocational expert Rocco Meola.

At step one, the ALJ found that Claimant has not engaged in substantial gainful activity since the alleged onset date of February 1, 1991. (Tr. 244.)

At step two, the ALJ found that the medical evidence established that Claimant had a severe medically determinable impairment involving a bipolar disorder. (Tr. 244.)

At step three, the ALJ determined that Claimant's severe impairment did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 244.) Although, the ALJ found that the medical evidence established that Claimant suffered from a bipolar disorder within the meaning of medical listing

8

12.04A3[4] in 20 C.F.R. Part 404, Subpart P, Appendix 1, Regulations No. 4. (Tr. 246.), he then ostensibly determined that the medical evidence did not establish that 12.04B or 12.04C was met. (*Id.*) In other words, the ALJ found that the Claimant's severe impairment did not meet or equal in severity the clinical criteria of an impairment listed in Appendix 1, Subpart P, Regulations No. 4.

Contrary to the ALJ's findings at step three, the medical expert testified that Claimant met 12.04B2, B3, 12.04C2 and C3. (Tr. 285.) The medical expert based these conclusions on evidence found within the record, specifically medical records from Robert Wood Johnson University Hospital, medical reports and records from Carrier Clinic, medical records from Muhlenberg Regional Medical Center, the medical report of Dr. Lanez, a psychiatric review technique, a report of contact, other additional medical records and reports including the report of Dr. Weinstein, written statements from

---

[4] 12.04 is entitled "Affective Disorders" and states that "[t]he required level of severity for these disorders is met when the requirements of both A and B are satisfied, or when the requirements in C are satisfied."

Section A requires "[m]edically documented persistence, either continuous or intermittent, of one of the following" disorders. The disorder listed under Section A3 is "[b]ipolar syndrome with a history of episodic periods manifested by the full symptomatic pictures of both manic and depressive syndromes (and currently characterized by either or both syndromes)."

Section B requires that the disorder listed in Section A result in "at least two of the following:

   1. Marked restriction of activities of daily living; or
   2. Marked difficulties in maintaining social functioning; or
   3. Marked difficulties in maintaining concentration, persistence, or pace; or
   4. Repeated episodes of decompensation, each of extended duration."

Section C requires "[m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

   1. Repeated episodes of decompensation, each of extended duration; or
   2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
   3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement."

9

Reverend David Lam and Deacon Jeffrey Hong Lok Tsang. (Tr. 285.) Based upon this evidence, the medical expert opined with a "reasonable amount of certainty" that the Claimant's functional capacity was markedly impaired and that the Claimant met the criteria of 12.04A, B, and C during the relevant time period. (Tr. 293.)

At step four, the ALJ found that the Claimant was not capable of performing her past relevant work. (Tr. 248.) The ALJ found that Claimant had mild or moderate restrictions when performing simple repetitive tasks. (Tr. 246.) He also found that Claimant could remember, understand, and carry out basic work instructions allowing her to effectively work in routine employment settings. (Tr. 246.)

At step five, the ALJ found that Claimant was capable of performing jobs that existed in significant numbers in the national economy. (Tr. 249.)

In reaching the conclusion that Claimant is not disabled, the ALJ made two errors. First, at step three, the ALJ rejected the medical expert's opinion that Claimant met the criteria of 12.04B and C during the relevant time period by finding that the record does not contain objective medical evidence during the relevant time period to support that opinion. (Tr. 246.) However, the record clearly contains objective medical evidence during the relevant time period which supports the medical expert's testimony. Second, also at step three, the ALJ rejected the testimony of Kwok Tam, reasoning that lay testimony can only be used to support objective medical evidence and, since the ALJ did not believe any objective medical evidence was present in the record, the lay testimony could not be considered. However, the record does indeed contain objective medical evidence that can support Kwok Tam's testimony.

10

At step three in the ALJ's decision, the ALJ rejected the medical expert's testimony that Claimant satisfied the criteria of 12.04B and 12.04C during the relevant time period. (Tr. 245.) The ALJ is free to reject the opinion of the medical expert, as long as the ALJ provides an explanation as to why the medical expert's opinion was rejected. *See Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). The ALJ explained that "the medical expert's opinion is much too heavily based on inference and assumption, rather than on objective medical evidence" from the relevant time period. (Tr. 246.) However, the ALJ's explanation for rejecting the medical expert's testimony is not supported by the record. The record contains objective medical evidence from the relevant time period that corroborates the medical expert's testimony.

The following objective medical evidence from the relevant time period corroborates the medical expert's testimony. First, Claimant's October 28, 2003 disability report, acknowledges that she was treated by a physician for depression on at least three separate occasions: Dr. Chaudhry on May 14, 1992 and Dr. Manley on August 18, 1992 and April 20, 1993—all three within the relevant time period. (Tr. 84.) Her reasons for those visits were depression; she was treated with both medication and counseling. (*Id.*) Second, in Dr. Weinstein's initial examination of Claimant in June 1995, he noted that Claimant had been taking Lithium and Trilafon for the four prior years. (Tr. 194, 226.) In Dr. Weinsten's 2003 report, he noted that when Claimant saw him initially in 1995, Claimant had already been diagnosed with bipolar disorder. (Tr. 194.) Third, in Dr. Lanez's 2003 medical report, Dr. Lanez noted that Claimant had been hospitalized at Ellis Hospital in Albany, New York twice during the relevant time period. (Tr. 201.) Claimant confirmed these hospitalizations in her disability report. (Tr. 85.)

11

The aforementioned reports are clear examples of objective medical evidence during the relevant time period that supports the medical expert's testimony. The medical expert's opinion was based upon this objective medical evidence, which the ALJ failed to address. Consequently, the ALJ's determination that Claimant did not meet step three was reached in error because "relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky*, 606 F.2d at 407.

At step three of the ALJ's decision, the ALJ also rejected the testimony of Kwok Tam, Claimant's husband. (Tr. 248.) The testimony of Kwok Tam supported the medical expert's opinion that Claimant satisfied the criteria of 12.04B and 12.04C during the relevant time period. The ALJ rejected Kwok Tam's testimony by finding that the testimony of lay persons can only be considered if it supports inferences drawn from objective medical evidence. (*Id.*) Given that the ALJ did not believe that the medical expert's opinion was supported by objective medical evidence from the relevant time period, the ALJ felt compelled to reject Kwok Tam's testimony. However, since there was objective evidence from the relevant time period to support the medical expert's opinion, the ALJ erred by rejecting Kwok Tam's testimony.

Claimant's husband Kwok Tam testified that Claimant could not effectively function in the employment setting, even when engaging in mundane work. (Tr. 35-47.) Indeed, he testified that she would frequently (two or three times per week) have uncontrollable crying spells. (Tr. 41.) He testified that Claimant had trouble taking care of the children by herself. (Tr. 46.) He testified that Claimant suggested that they sell the children because she could not properly care for them. (Tr. 46.) Additionally, he testified

that Claimant lacked the ability to concentrate.  He described how Claimant used to like playing the piano, but Claimant asked to him to get rid of it in 1994 due to concentration problems. (Tr. 46.)

The fact that Claimant was treated by a physician for depression on at least three separate occasions during the relevant time period and was hospitalized at least twice during the relevant time period supports the testimony of Kwok Tam.  Since Kwok Tam's testimony supports the opinion of the medical expert, it was an error for the ALJ to give no weight to Kwok Tam's testimony.  (Tr. 246.)

After rejecting the medical expert's opinion and Kwok Tam's testimony at step three, the ALJ posed the following hypothetical to the vocational expert:

> Consider such an individual, let's say, through December 1994 and that person would have been under age 40 at that point, with no exertional limitations and the residual functional capacity for no exertional limitations.  And limited to performing simple repetitive tasks not involving extensive contact throughout a workday with other individuals.  Are there jobs in the economy, local, regional, national economy, such an individual could perform and, if so, what jobs and with a brief description?

(Tr. 300.)  The vocational expert answered that there exists over 15,000 such jobs in New Jersey state and over 3,600 such jobs in the New York metro area.  (Tr. 301.)  At step five of the ALJ's decision, the ALJ relied upon the answer of the vocational expert to conclude that Claimant could perform jobs that exist in significant numbers.  (Tr. 249.)

The ALJ's reliance upon the vocational expert's answer to the hypothetical is misplaced because the hypothetical did not include the entire record—specifically the objective medical evidence from the relevant time period that supported the medical expert's testimony that Claimant met the 12.04B and 12.04C criteria during the relevant

13

time period.   Because the hypothetical failed to take into account all the evidence presented by the record, the vocational expert's answer should have been disregarded.

Lastly, there is no need to address Claimant's bias argument because this case will not be remanded to ALJ DeSteno.

## III.   CONCLUSION

Because the ALJ erred in rejecting the medical expert's testimony and because the ALJ erred in relying upon the vocational expert's testimony, the case is hereby REVERSED and REMANDED for further proceedings consistent with this opinion.

**SO ORDERED.**

**S/Susan D. Wigenton, U.S.D.J.**

cc: Madeline Cox Arleo, U.S.M.J.